UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
-----------------------------------------------------X

ANDRE EPPS,                                    :
                                               :
                    Plaintiff,                 :
                                               :
        vs.                                    :
                                               :
CITY OF SYRACUSE; OFFICER JAMES :               No. 5:10-CV-1542 (DNH) (TWD)
STONE, in his individual and official          :
capacities; and OFFICER JAMES                  :
MORRIS, in his individual and official         :
capacities,                                    :
                                               :
                    Defendants.                :
-----------------------------------------------------X


**REPLY MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION
TO SUPPLEMENT THE COMPLAINT AND JOIN TREVON HANKS AS PLAINTIFF
AND OFFICER MICHAEL THOMAS AS DEFENDANT**

ERIN BETH HARRIST (Bar Roll No. 517604)
REBECCA T. ENGEL (Bar Roll No. 516857)
ARTHUR EISENBERG (Bar Roll No. 101576)
TAYLOR PENDERGRASS (Bar Roll No. 516829)
New York Civil Liberties Union Foundation
125 Broad Street, 19th Fl.
New York, New York 10004
(212) 607-3300

Dated: July 26, 2013

## **TABLE OF CONTENTS**

INTRODUCTION..................................................................................................1

I.      STATE LITIGATION RELATING TO MR. HANKS'S NOTICE OF CLAIM
        DOES NOT UNDULY PREJUDICE DEFENDANTS IN THIS
        ACTION......................................................................................2

II.     PLAINTIFF'S MOTION TO SUPPLEMENT AND FOR JOINDER IS REVIEWED
        UNDER THE LIBERAL STANDARD GOVERNING FEDERAL RULES OF
        PROCEDURE 15 & 20....................................................................4

CONCLUSION................................................................................................6

## TABLE OF AUTHORITIES

### Cases

Barnhart v. Town of Parma, 252 F.R.D. 156 (W.D.N.Y. 2008) .................................................4, 5

Barr Rubber Products Co. v. Sun Rubber Co., 425 F.2d 1114 (2d Cir. 1970) ...........................4, 5

Brandon v. Board of Education, 635 F.2d 971 (2d Cir. 1980) .........................................................2

Chen v. City of Syracuse, No. 6-cv-1143, 2009 WL 529553 (N.D.N.Y. Mar. 2, 2009)................4

Day v. Moscow, 955 F.2d 807 (2d Cir. 1992)..............................................................................2, 3

Felder v. Casey, 487 U.S. 131 (1988) .............................................................................................3

Hygh v. Jacobs, 961 F.2d 359 (2d Cir. 1992)..................................................................................3

Kassner v. 2nd Avenue Delicatessen, Inc., 496 F.3d 229 (2d Cir. 2007).........................................5

Krumme v. WestPoint Stevens, Inc., 143 F.3d 71 (2d Cir. 1998)....................................................4

Lowth v. Town of Cheektowaga, 82 F.3d 563 (2d Cir. 1996) ........................................................4

Monell v. Department of Social Services, 436 U.S. 658 (1978) .....................................................1

Nimley v. City of New York, 414 F.3d 381 (2d Cir. 2005) .............................................................4

Oneida Indian Nation of New York State v. County of Oneida, 199 F.R.D. 61 (N.D.N.Y. 2000).4

Parker v. Columbia Pictures Industries, 204 F.3d 326 (2d Cir. 2000) ...........................................5

Quarantino v. Tiffany & Co., 71 F.3d 58 (2d Cir. 1995) ...............................................................4

Ramunno v. County of Westchester, 637 N.Y.S.2d 481 (N.Y. App. Div. 1996)............................2

Watson v. Wright, No. 08-Cv-00960, 2011 WL 1118608 (W.D.N.Y. Jan. 11, 2011)....................5

### Statutes and Rules

Fed. R. Civ. P. 15..................................................................................................................passim

Fed. R. Civ. P. 16...........................................................................................................1, 5, 6

Fed. R. Civ. P. 20..................................................................................................................passim

N.Y. C.P.L.R. 5519 ......................................................................................................................2

N.Y. Gen. Mun. Law § 50-i..............................................................................................................3

## INTRODUCTION

Pursuant to Federal Rule of Civil Procedure 15(d), Plaintiff has moved to supplement his complaint with allegations about the unjustified tasing and false arrest of another Syracuse student, Trevon Hanks, that were caused by the same policies and practices of the City of Syracuse alleged by Plaintiff in his claims pursuant to <u>Monell v. Department of Social Services</u>, 436 U.S. 658 (1978). Plaintiff also seeks to join Trevon Hanks as plaintiff and Officer Michael Thomas, the officer who tased and arrested Mr. Hanks, as defendant, pursuant to Federal Rule of Civil Procedure 20(a). Plaintiff files this reply brief for the limited purpose of addressing two arguments raised by Defendants in their opposition to Plaintiff's motion: (1) that the state litigation relating to Mr. Hanks's notice of claim unduly prejudices Defendants because it will lead to substantial delay in the resolution of this action; and (2) that the good cause standard of Rule 16 applies to Plaintiff's motion, rather than the liberal standards of Rules 15 and 20.[1]

First, the state notice of claim litigation will not substantially delay the resolution of this action. If the City of Syracuse were to prevail on its appeal of the order permitting Mr. Hanks to file a late notice of claim, Plaintiff and Mr. Hanks would stipulate to the dismissal of the state claims for false arrest, assault and battery. Not only would there be no need for time-consuming motion practice, dismissal of the state claims would also not create confusion regarding the scope of discovery since discovery on the state and federal claims – which would remain in the case – is virtually identical. Second, it is well-established that the proper standard of review governing Plaintiff's motion is the liberal standard governing Federal Rules of Procedure 15 and

---

[1] Plaintiff also requested an opportunity to file further briefing to address Defendants' assertion that the requirements for supplementation and joinder are not met by common allegations regarding a municipal policy or practice. The Court denied this request by Order dated July 18, 2013 (ECF No. 94).

20 – leave should be freely given when justice so requires. Defendants incorrectly imply that the good cause standard of Rule 16 is the applicable standard of review. The case law cited by Defendants, however, applies when a plaintiff moves to amend to add claims that existed at the time of the initial complaint after the issuance of a scheduling order, not where, as here, the plaintiff moves to supplement pleadings with newly arising claims.

## I.

### STATE LITIGATION RELATING TO MR. HANKS'S NOTICE OF CLAIM DOES NOT UNDULY PREJUDICE DEFENDANTS IN THIS ACTION

Consistent with the New York Supreme Court Order entered on April 24, 2013, Mr. Hanks has satisfied the condition precedent to filing state law claims in this action by filing a notice of claim with the City. The Defendant City of Syracuse now argues that its appeal of the April 24, 2013 Order granting Mr. Hanks leave to file a late notice of claim will cause significant delay in this action if Mr. Hanks is joined as plaintiff, thus causing undue prejudice to Defendants.[2] Defs.' Br. at 7. This argument lacks merit for several reasons.

First, actions to recover for federal civil rights violations are not subject to the notice of claim requirements of New York General Municipal Law § 50-i. See Brandon v. Bd. of Educ., 635 F.2d 971, 974 n.2 (2d Cir. 1980) (compliance with state notice requirements are not required for civil rights actions under 42 U.S.C. § 1983). As stated by the Second Circuit, "[s]ince the filing of a notice of claim [is] not a prerequisite to the federal-court suit, a municipality perforce [can] not require a delay of the commencement of a federal court suit pending an examination

---

[2] While N.Y. C.P.L.R. 5519(a)(1) automatically "stays all proceedings to enforce the judgment or order appealed from pending the appeal" when a notice of appeal is filed by a municipality, an appeal from an order granting leave to serve a late notice of claim does not enjoin a plaintiff from pursuing his claims during the pendency of the appeal. See Ramunno v. County of Westchester, 224 A.D.2d 403, 403-04, 637 N.Y.S.2d 481, 481 (N.Y. App. Div. 1996) (citing cases).

based on such a notice." Day v. Moscow, 955 F.2d 807, 814 (2d Cir. 1992); see Defs.' Br. at 7 (arguing that the 50-h hearing will delay the Epps litigation if supplementation and joinder are allowed). Thus, the state notice of claim litigation, including the City of Syracuse's decision not to conduct a 50-h hearing pending the appeal, does not affect the litigation of Mr. Hanks's federal constitutional claims.

Second, if the City's appeal is ultimately successful, Plaintiff would stipulate – consistent with controlling precedent holding that this Court would not have jurisdiction over the state law claims – to dismissal of those claims. Felder v. Casey, 487 U.S. 131, 151 (1988) (holding that state notice-of-claim statues apply to state-law claims brought in federal court); N.Y. Gen. Mun. Law § 50-i (under New York law, a notice of claim is a condition precedent to bringing a tort action against a municipal corporation). The City will not need to engage in a laborious and time-consuming motion in order to dismiss the state claims if the order allowing the late notice of claim is overturned. See Defs.' Br. at 7.

Third, the state litigation does not cause a lack of clarity regarding the claims and parties in the lawsuit if Plaintiff's motion to supplement and for joinder is granted. See Defs.' Br. at 7 (the City argues that the state litigation makes it "unclear as to what state law claims and against which parties would remain in the action and whether discovery relating to those claims would be necessary"). As noted above, Plaintiff and Mr. Hanks would stipulate to the dismissal of the state claims for false arrest, battery, and assault if the City prevails on its appeal. The federal law claims of excessive force and false arrest, as well as Mr. Hanks's claims under Monell, would remain, as would all parties including Mr. Hanks and Officer Thomas.

Fourth, discovery on the federal and state claims is virtually identical. The elements of federal and state false arrest claims are the same, see Hygh v. Jacobs, 961 F.2d 359, 366 (2d Cir.

3

1992), and both federal excessive force and state battery and assault claims involve the same

inquiries into whether force was used and whether that force was reasonable under the

circumstances. See e.g., Nimley v. City of New York, 414 F.3d 381, 390-91 (2d Cir. 2005);

Lowth v. Town of Cheektowaga, 82 F.3d 563, 573 (2d Cir. 1996); Chen v. City of Syracuse, No.

6-cv-1143, 2009 WL 529553, at *5 (N.D.N.Y. Mar. 2, 2009). Thus, the question of whether Mr.

Hanks's state law claims may be dismissed does not create confusion regarding the scope of

discovery.

     Finally, the proper consideration for whether there will be "significant delay" amounting

to undue prejudice is the current stage of the existing lawsuit, not speculative sources of delay

under the control of the opposing party. See Krumme v. WestPoint Stevens, Inc., 143 F.3d 71, 88

(2d Cir. 1998) (amending pleadings amounts to undue prejudice when "discovery ha[s] already

been completed and [the non-movant] ha[s] already filed a motion for summary judgment");

Oneida Indian Nation of New York State v. County of Oneida, 199 F.R.D. 61, 78 (N.D.N.Y.

2000) (rejecting the argument that a speculative appeal – under the control of the opposing party

– may amount to undue prejudice). There will be no significant delay in the resolution of the case

amounting to a level of undue prejudice because discovery is not scheduled to close until January

31, 2014, discovery on the Monell claims of both Mr. Hanks and Plaintiff are identical, and

discovery on Mr. Hanks's claims is small in scope. See also Pl.'s Br. at 13-14.

## II.

### PLAINTIFF'S MOTION TO SUPPLEMENT AND FOR JOINDER IS REVIEWED UNDER THE LIBERAL STANDARD GOVERNING FEDERAL RULES OF PROCEDURE 15 & 20

     It is well-established that motions to supplement and for joinder must be reviewed under

the liberal standard of Rules 15 and 20. Quaratino v. Tiffany & Co., 71 F.3d 58, 66 (2d Cir.

1995) (leave to supplement "is normally granted, especially when the opposing party is not prejudiced by the supplemental pleading"); Barnhart v. Town of Parma, 252 F.R.D. 156, 159 (W.D.N.Y. 2008) (citing Barr Rubber Prods. Co. v. Sun Rubber Co., 425 F.2d 1114, 1127 (2d Cir. 1970)) ("courts have interpreted the requirements of Rule 20(a) liberally to promote judicial economy and to allow related claims to be tried within a single proceeding"). This standard applies to Plaintiff's motion to supplement and to join Mr. Hanks and Officer Thomas.

Defendants appear to imply that the proper standard of review is the good cause standard of Rule 16(b)(4). See Defs' Br. at 1 n. 1. This proposition is incorrect as a legal matter.

First, the body of law cited by Defendants to support a good cause standard of review applies specifically to amending pleadings to add claims that existed at the time of the initial complaint after the issuance of a scheduling order. For instance, in Parker v. Columbia Pictures Industries, 204 F.3d 326 (2d Cir. 2000), the Second Circuit addressed the plaintiff's attempt to amend his complaint – after the defendants moved for summary judgment – to include claims that existed at the time of his initial complaint. Id. at 340-41. Similarly, in Kassner v. 2nd Avenue Delicatessen, Inc., the other case cited by Defendants, the plaintiff moved to amend to cure defective pleadings after a motion to dismiss by the defendants. 496 F.3d 229, 242-44 (2d Cir. 2007). In contrast, motions to supplement, such as Plaintiff's motion, involve the addition of claims that arose subsequent to the filing of the complaint. These cases do not alter the liberal standard of review that applies to motions to supplement under Rule 15(d). See Watson v. Wright, No. 08-Cv-00960, 2011 WL 1118608, at *5 (W.D.N.Y. Jan. 11, 2011) (Rule 16(b)'s good cause standard is not applicable to motions to supplement).[3]

---

[3] The test for determining whether good cause exists to amend a complaint after the issuance of a scheduling order – the diligence of the moving party – also demonstrates that the standard only applies to motions to amend. See Parker, 204 F.3d at 340. The court looks to whether and when

The difference between the standard for motions to amend and for motions to supplement logically follows from the fact that parties cannot foresee whether related claims will arise in the future at the time a scheduling order is issued pursuant to Rule 16. Thus, case management plans do not require deadlines for supplementing the complaint. See Fed. R. Civ. P. 16(b)(3) (requiring time limit for amending the complaint only).[4] Accordingly, the initial case management plan issued in this case – cited by Defendants, despite the fact that it has been subsequently modified by this Court – imposed no deadline for supplementation. See Pretrial Scheduling Order filed March 22, 2011, ECF No. 19. Plaintiff could not have anticipated supplementing his complaint with allegations relating to Mr. Hanks because the scheduling order was issued on March 22, 2011, over a year prior to the incident involving Mr. Hanks on June 19, 2012.

For these reasons, the good cause standard of Rule 16 does not apply and Plaintiff's motion must be reviewed under the liberal standard of Rules 15 and 20.

## CONCLUSION

Plaintiff's motion to supplement the complaint and join Trevon Hanks as plaintiff and Officer Michael Thomas as defendant should be granted.

---

the moving party had notice that the complaint was defective, see id. at 340, which is not a relevant consideration for allegations that arise after the initial complaint.

[4] While a deadline for joinder is contemplated by Rule 16(b)(3), the moving party also cannot foresee the need to add parties based on claims that do not exist at the time of the original complaint. See Pl.'s Br. at 8 (citing cases holding that the addition of parties through filing supplemental pleadings is routinely permitted).

/s/

_____

ERIN BETH HARRIST (Bar Roll No. 517604)
REBECCA T. ENGEL (Bar Roll No. 516857)
ARTHUR EISENBERG (Bar Roll No. 101576)
TAYLOR PENDERGRASS (Bar Roll No. 516829)
New York Civil Liberties Union Foundation
125 Broad Street, 19th Fl.
New York, New York, 10004
(212) 607-3300

Dated: July 26, 2013

**Westlaw Delivery Summary Report for HARRIST,ERIN B**

| | |
|---|---|
| Date/Time of Request: | Friday, July 26, 2013 15:44 Central |
| Client Identifier: | EPPS |
| Database: | DCT |
| Citation Text: | Not Reported in F.Supp.2d |
| Lines: | 533 |
| Documents: | 1 |
| Images: | 0 |

The material accompanying this summary is subject to copyright. Usage is governed by contract with Thomson Reuters, West and their affiliates.

Westlaw.

Not Reported in F.Supp.2d, 2009 WL 529553 (N.D.N.Y.)
**(Cite as: 2009 WL 529553 (N.D.N.Y.))**

**H**
Only the Westlaw citation is currently available.

United States District Court,
N.D. New York.
Ling-rong CHEN, Plaintiff,
v.
The CITY OF SYRACUSE, Syracuse Police Officer Joseph Reilly, Syracuse Police Officer Harry Burns, and Syracuse Police Officer Mark Kleist, said Police Officer Defendants sued both individually and as Police officers of the City of Syracuse Police Department, Defendants.

No. 6:06–CV–1143 (NPM/GHL).
March 2, 2009.

West KeySummary**Federal Civil Procedure** 170A €⟶2491.5

170A Federal Civil Procedure
    170AXVII Judgment
        170AXVII(C) Summary Judgment
            170AXVII(C)2 Particular Cases
                170Ak2491.5 k. Civil Rights Cases in General. Most Cited Cases
    Reasonable minds could differ on the issue of whether police officers had probable cause to arrest an arrestee for harassment and thus, the officers' motion for summary judgment was denied in the arrestee's § 1983 action. An officer contended that the arrestee struck him. The arrestee, however, contended that the officer his chest in her face in a threatening manner, and she raised her hands to protect herself. U.S.C.A. Const.Amend. 4; McKinney's Penal Law § 240.26; 42 U.S.C.A. § 1983.

Cote, Limpert & Van Dyke, LLP, <u>Joseph S. Cote, III, Esq.</u>, <u>M. Joanne Van Dyke, Esq.</u>, of Counsel, Syracuse, NY, for Plaintiff.

Chartwell Law Offices, LLP, John W. Wutz, Esq., of Counsel, Philadelphia, PA, for Plaintiff.

Office/Corporation Counsel, <u>Rory A. McMahon, Esq.</u>, Mary Ann Doherty, Esq., of Counsel, Syracuse, NY, for Defendants.

### *MEMORANDUM–DECISION AND ORDER*

<u>NEAL P. McCURN</u>, Senior District Judge.

**\*1** Plaintiff Ling–Rong Chen ("Mrs.Chen") brings this action for monetary damages against the City of Syracuse ("City"), Syracuse Police Officer Joseph Reilly ("Officer Reilly"), Syracuse Police Officer Harry Burns <sup>FN1</sup> ("Officer Burns") and Syracuse Police Officer Mark Kleist ("Officer Kliest") (collectively, "police officer defendants"), pursuant to <u>42 U.S.C.A. § 1983</u>. Plaintiff seeks redress for alleged violations of civil rights secured to her by, but not limited to, the Fourth and Fourteenth Amendments to the United States Constitution, in the form of general damages against all defendants and punitive damages against the police officer defendants in their individual capacities, together with the costs and disbursements of this action. Specifically, the eight-count amended complaint (Doc. No. 56) alleges the following federal and supplemental state law claims: excessive force, false arrest, false imprisonment, illegal search and seizure, and unlawful interrogation pursuant to <u>§ 1983</u> against the police officer defendants; false arrest, battery, false imprisonment, intentional infliction of emotional distress, negligent infliction of emotional distress, and malicious prosecution brought under pendent jurisdiction against all defendants; and negligent supervision, including negligent training of officers, detectives and employees, against the City only.

> <u>FN1</u>. Doc. No. 49–2 is a transcript of the examination before trial of Henry Burns, III. The court presumes that Henry is the correct given name of Officer Burns. The parties are directed to correct the discrepancy.

The court has jurisdiction over this matter pursuant to <u>42 U.S.C.A. § 1983</u> and <u>28 U.S.C.A. §§ 1331</u> and <u>1343(a)(3)</u>. Currently before the court is defendants' motion for summary judgment (Doc. No. 45) pursuant to <u>Rule 56 of the Federal Rules of Civil Procedure</u>. For the reasons stated below, the motion for summary judgment will be granted in part and denied in part.

### *I. Background*

### A. Facts

The court assumes familiarity with the facts and procedural history of this case, as set forth in the court's Memorandum Decision and Order dated March 9, 2007 (Doc. No. 12). The court reiterates those facts and any additional facts taken from the parties' briefs on this new motion only as necessary to clarify its findings.

### *II. Discussion*

As a threshold matter, the parties concur that no evidentiary documentation has been proffered that supports a claim for negligent hiring, training and/or supervision against the City which would support a <u>*Monell*</u><sup>FN2</sup> claim. Accordingly, Mrs.

Chen consents to dismissal of this portion of her claim against the City.

> FN2. *See* *Monell v. New York Department of Social Services,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978) (Supreme Court found that municipalities could be sued under § 1983 as "persons" within the meaning of that statute only "when the alleged unlawful action implemented or was executed pursuant to a governmental policy or custom").

## A. Summary Judgment

A motion for summary judgment shall be granted "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c) (West 2009). *See also* *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986); *Security Ins. Co. of Hartford v. Old Dominion Freight Line, Inc.,* 391 F.3d 77, 82 (2d Cir.2004). "[I]n assessing the record to determine whether there is a genuine issue as to a material fact, the court is required to resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought[.]" *Security Ins.,* 391 F.3d at 83, *citing* *Anderson V. Liberty Lobby, Inc.,* 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). "Only when reasonable minds could not differ as to the import of the evidence is summary judgment proper." *Bryant v. Maffucci,* 923 F.2d 979, 982 (2d Cir.), *citing* *Anderson,* 477 U.S. at 250–51.

**\*2** While the initial burden of demonstrating the absence of a genuine issue of material fact falls upon the moving party, once that burden is met, the non-moving party must "set forth specific facts showing that there is a genuine issue for trial," *see* *Koch v. Town of Brattleboro, Vermont,* 287 F.3d 162, 165 (2d Cir.2002), (*citing* Fed.R.Civ.P. 56(c)), by a showing sufficient to establish the existence of every element essential to the party's case, and on which that party will bear the burden of proof at trial. *See* *Peck v. Public Serv. Mut. Ins. Co.,* 326 F.3d 330, 337 (2d Cir.2003), *cert. denied,* 540 U.S. 1005, 124 S.Ct. 540, 157 L.Ed.2d 410 (2003).

## B. 42 U.S.C.A. § 1983 Generally

In order to prevail on a claim under 42 U.S.C.A. § 1983, a plaintiff must establish the violation of a right secured by the Constitution and laws of the United States, and that the violation was committed by a person acting under color of state law. Section 1983 states in pertinent part that

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable....

> 42 U.S.C.A. § 1983 (West 2007).

In the case at bar, it is undisputed that the defendants were acting under the color of state law.

## C. Federal Claims

1. False Arrest and Imprisonment

A § 1983 claim for false arrest and imprisonment derives from the "Fourth Amendment right to remain free from unreasonable seizures, which includes the right to remain free from arrest without probable cause. In analyzing § 1983 claims for unconstitutional false arrest, [the Second Circuit has] generally looked to the law of the state in which the arrest occurred." *Jaegly v. Couch*, 439 F.3d 149, 152 (2d Cir.2006) (internal citations and quotations omitted).

"In order to establish a claim for false arrest and/or imprisonment under § 1983 and New York law, a plaintiff must show that the defendant intentionally confined him without his consent and without justification. Probable cause is a justification for, and a complete defense to, a claim for false arrest and imprisonment under both § 1983 and New York law." *Swindell v. New York Dept. of Environmental Conservation*, 371 F.Supp.2d 172, 179 (N.D.N.Y.2005). "Whether probable cause exists depends upon the reasonable conclusion to be drawn from the facts known to the arresting officer at the time of arrest." *Devenpeck v. Alford*, 543 U.S. 146, 152, 125 S.Ct. 588, 160 L.Ed.2d 537 (2004). "The validity of the arrest does not depend on whether the suspect actually committed a crime; the mere fact that the suspect is later acquitted of the offense for which he is arrested is irrelevant to the validity of the arrest." *Michigan v. DeFillippo*, 443 U.S. 31, 36, 99 S.Ct. 2627, 61 L.Ed.2d 343 (1979). "An officer has probable cause to arrest when he or she has knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed or is committing a crime." *Jaegly*, 439 F.3d at 152.

*3 Here, the defendants argue that based on Mrs. Chen's behavior at the airport ticket counter, Officer Reilly had probable cause to arrest Mrs. Chen for disorderly conduct, citing New York Penal Law § 240.20, which states in pertinent part that "A person is guilty of disorderly conduct when, with intent to cause public convenience, annoyance or alarm, or recklessly creating a risk thereof: (6) He congregates with other persons in a public place and refuses to comply with a lawful order of the police to disperse ...." N.Y. Penal § 240.20(6) (West 2009). Defendants argue that "[i]n the area of the ticket counter where [Mrs. Chen] was located, there were between 15 and 20 other people congregated near her and were observing her actions." Doc. No. 45–4, p. 20. Because Mrs. Chen did not comply when Officer Reilly allegedly told her to leave the airport, defendants proffer that "[Mrs. Chen] was: (1) congregating with persons in a public place and 2) refusing the leave the scene of a disturbance when requested to by police officers, she was (sic) causing public inconvenience and annoyance." *Id.* The court deems this argument disingenuous, and finds a genuine issue of material fact on the matter of false arrest and imprisonment.

Defendants also argue that Officer Reilly had probable cause to arrest Mrs. Chen for harassment, citing New York State Penal Law § 240.26, which states in pertinent part that "[a] person is guilty of harassment in the second degree when, with intent to harass, annoy or alarm another person: 1. He or she strikes, shoves, kicks, or otherwise subjects such other person to physical contact, or attempts or threatens to do the same ...." N.Y. Penal § 240.26(1) (West 2009). Officer Reilly contends that Mrs. Chen struck him. Mrs. Chen contends that Officer Reilly shoved his chest in her face in a threatening manner, and she raised her hands to protect herself. Based on the evidence before the court, the court finds that reasonable minds could differ on this issue, precluding summary judgment.

Finally, defendants argue that Mrs. Chen resisted arrest, citing New York State Penal Law § 205.30 which states in pertinent part that "[a] person is guilty of resisting arrest when he intentionally prevents or attempts to prevent a police officer or peace officer from effecting an authorized arrest of himself or another person." NY Penal § 205.30 (West 2009). Defendants argue that Mrs. Chen resisted the officer's attempt to place handcuffs on her. Mrs. Chen disputes the defendants' version of events, as does her husband, Dr. Chen. Again, based on the evidence before the court, reasonable minds could

differ on the conflicting evidence proffered by the parties, thereby precluding summary judgment.

## 2. Malicious Prosecution

"Although § 1983 provides plaintiffs with a federal cause of action, [the Second Circuit] borrow[s] the elements of the underlying malicious prosecution from state law." *Washington v. County of Rockland,* 373 F.3d 310, 315 (2d Cir.2004). In order to prevail in an action for malicious prosecution under New York law, a plaintiff must prove: "1) the initiation or continuation of a criminal proceeding against plaintiff; 2) termination of the proceeding in plaintiff's favor; 3) lack of probable cause for commencing the proceeding; and 4) actual malice as a motivation for defendant's actions." *Russell v. Smith,* 68 F.3d 33, 36 (2d Cir.1995). "The absence of probable cause is an essential element of a claim for malicious prosecution." *McClellan v. Smith,* 439 F.3d 137, 145 (2d Cir.2006).

*4 "[T]he only question for [the court] to consider is whether [the] arrest was ... justified ... [T]he defendants bear the burden of proving that probable cause existed for the plaintiff's arrest." *Savino v. City of New York,* 331 F.3d 63, 76 (2d Cir.2003) (internal quotes omitted). However, "even when probable cause is present at the time of arrest, evidence could later surface which would eliminate that probable cause. If probable cause were no longer present at the time of the arraignment ..., malicious prosecution might then lie." *Cox v. County of Suffolk,* 780 F.Supp. 103, 108 (E.D.N.Y.1991) (internal quotations omitted).

In the case at bar, the issue of probable cause is disputed, and defendants bear the burden of convincing the trier of fact that probable cause existed for Mrs. Chen's arrest. Defendants argue that Mrs. Chen's actions at the ticket counter "would lead a reasonable officer to believe that [Mrs. Chen] had committed a crime ." Because of the discrepancies between the sworn testimony of plaintiff and defendants, and between the testimony and visual evidence, the court is precluded from granting summary judgment on the issue of malicious persecution.

## 3. Excessive Force

"[A] [p]olice officer's application of force is excessive, in violation of the Fourth Amendment, if it is objectively unreasonable in light of the facts and circumstances confronting them, without regard to their underlying intent and motive." *Maxwell v. City of New York,* 380 F.3d 106, 108 (2d Cir.2004) (citing *Graham v. Connor,* 490 U.S. 386, 397, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989)) (internal quotations omitted). "The reasonableness of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 of hindsight ... Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates the Fourth Amendment." *Graham,* 490 U.S. at 396.

"Neither the Supreme Court nor the Second Circuit has established that a person has the right not to be handcuffed in the course of a particular arrest, even if he does not resist or attempt to flee." *Soares v. State of Connecticut,* 8 F.3d 917, 922 (2d Cir.1993). However, "[h]andcuffing has been found to give rise to a claim of excessive force where an individual suffers an injury as a result of being handcuffed." *Rosado v. Williams,* 2006 WL 1168032 at * 3 (D.Conn.2006). "[A] reasonable arrest involves handcuffing the suspect, and to be effective handcuffs must be tight enough to prevent the arrestee's hands from slipping out. Placing handcuffs on an arrestee tight enough to cause nerve damage may, however, constitute excessive force in violation of the Fourth Amendment." *Id.* The Second Circuit has permitted a plaintiff's claim to survive summary judgment after allegations that during the course of an arrest, a police officer yanked the plaintiff out of a car, threw her up against a fender, and twisted her arm behind her back, causing minor bruising. *Maxwell,* 380 F.3d at 108 (citing *Robison v. Via,* 821 F.2d 913, 923–24 (2d Cir.1987)). Here, we also have testimony about bruising on Mrs. Chen's arms and other parts of her body, allegedly resulting from Mrs. Chen being handcuffed and forcibly removed from the ticket counter to the airport police station. Photographs submitted with the parties' motion papers bear out the allegation of injury. Based on the evidence

http://web2.westlaw.com/print/printstream.aspx?prft=HTML&vr=2....

before it, the court finds that there remains a genuine issue of material fact surrounding the actions of the defendant police officers because reasonable minds could differ in determining whether the officers used excessive force. The court is therefore precluded from granting summary judgment on the issue of excessive force.

**D. State Law Claims**

1. Battery

  **\*5** "To prove a civil battery claim against a police officer, a plaintiff is required to show that the officer made bodily contact, that the contact was offensive, and that [the officer] intended to make the contact. Additionally, the plaintiff is] required to prove that [the officer's] conduct was not reasonable within the meaning of the New York statute concerning justification of law enforcement's use of force in the course of their duties [i.e., N.Y. Penal Law § 35.30(1) ]." *Kavazanjian v. Rice,* 2008 WL 5340988 at \* 6–7 (E.D.N.Y.2008) (*citing Nimely v. City of New York,* 414 F.3d 381, 391 (2d Cir.2005)) (internal quotation marks and citations omitted). "New York Penal Law § 35.30(1) provides, in relevant part, that '[a] police officer ... in the course of effecting or attempting to effect an arrest ... may use physical force when and to the extent he or she reasonably believes such to be necessary to effect the arrest....' Thus, in effect, 'the test for whether a plaintiff can maintain [a state-law assault-and-battery] cause of action against law enforcement officials is ... the exact same test as the one used to analyze a Fourth Amendment excessive force claim." *Id.* (*citing Hogan v. Franco,* 896 F.Supp. 1313, 1315 n. 2 (N.D.N.Y.1995).

  In the case at bar, defendants argue that New York State law regarding assault and battery parallels the federal laws regarding excessive force, citing *Lalonde v. Bates,* 166 F.Supp.2d 713, 719 (N.D.N.Y.2001) for the premise that Mrs. Chen's cause of action for battery should be dismissed as duplicative. Mrs. Chen argues that Officer Reilly's conduct amounted to nothing more than assault and battery on her, unrelated to the officer's police actions. Consequently, she avers, her state law claim for assault and battery is separate and distinct from the excessive use of force claim.

  In their argument, defendants neglect to point out that the *Lalonde* court found that summary judgment was denied with respect to the plaintiff's assault and battery claims for the same reasons that summary judgment was denied on the excessive force claims. *Id. See also Ahern v. City of Syracuse,* 411 F.Supp.2d 132, 143–44 (N.D.N.Y.2006) ("Because plaintiff's claims for assault and battery parallel plaintiff's excessive force claims and involve questions of fact as detailed above, defendants motion for summary judgment as to plaintiff's assault and battery claims against [police officers] is DENIED"). Accordingly, because Mrs. Chen has proffered sufficient evidence to withstand summary judgment with respect to her Fourth Amendment excessive-force claims against the police officer defendants, Mrs. Chen's common law battery claim similarly survives summary judgment.

2. Infliction of Emotional Distress

  Mrs. Chen alleges that the police officer defendants committed the common law torts of intentional infliction of emotional distress ("IIED") and negligent infliction of emotion distress ("NIED") against her. As a threshold issue, Mrs. Chen concedes that a cause of action for IIED and/or NIED cannot be maintained against the municipal entity. Accordingly, summary judgment is granted on this issue, and the claims of IIED and NIED against the City are dismissed.

a. Intentional Infliction of Emotional Distress

  **\*6** As this court has recently held,[FN3] "[t]o state a claim for IIED under New York law, [a] plaintiff must plead the

following four elements: (1) extreme and outrageous conduct; (2) intent to cause severe emotional distress; (3) a causal relationship between the conduct and the resulting injury; and (4) severe emotional distress." *Davey v. Jones,* 2007 WL 1378428 at * 3 (S.D.N.Y.2007) (*citing Bender v. City of New York,* 78 F.3d 787, 790 (2d Cir.1996)). "To satisfy the first element, the alleged conduct must be so outrageous in character and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized society." *Davey,* 2007 WL 1378428 at *3 (internal citations and quotations omitted). The Second Circuit has noted that New York State courts have sustained IIED claims where there is "some combination of public humiliation, false accusations of criminal or heinous conduct, verbal abuse or harassment, physical threats, permanent loss of employment, or conduct contrary to public policy." *Stuto v. Fleishman,* 164 F.3d 820, 828 (2d Cir.1999).

> FN3. *See Dzwonczyk v. Syracuse Police Dept.,* 2008 WL 5459147 at *17–18 (N.D.N.Y.2008).

In the instant case, defendants argue that the conduct complained of falls within the scope of Mrs. Chen's false arrest, battery and excessive force claims, and, in the alternative, that she has failed to adduce any facts in support of her IIED claim. "[T]he Second Circuit has not clearly resolved the issue of whether, under New York law, duplicative IIED claims are barred, nor, if so, the degree to which an IIED claim must "overlap" other torts to be deemed duplicative ... Nevertheless, where, as here, the alleged tortious conduct falls entirely within the ambit of traditional tort liability-where the plaintiff alleges no facts whatsoever beyond those necessary to sustain claims of false arrest and excessive force-we believe New York state courts would not entertain a separate claim for IIED." *Li v. Aponte,* 2008 WL 4308127 at * 8 (S.D.N.Y.2008). "However, some courts have sustained IIED claims even where the conduct complained of fell under other traditional tort doctrines." *Sylvester v. City of New York,* 385 F.Supp.2d 431, 443 (S.D.N.Y.2005). Here, Mrs. Chen alleges facts that sustain a separate claim of IIED. Accordingly, based on the evidence before it, the court finds a genuine issue of material fact and is precluded from granting summary judgment.

b. Negligent infliction of Emotional Distress

A plaintiff who alleges that she suffered emotional harm due to a defendant's negligence may recover on a claim for NIED in New York under either a "bystander theory," meaning the plaintiff was "a bystander who was in the zone of danger [and] suffers emotional trauma as a result of [her] observations," or a "direct duty theory," meaning "the defendant breache[d] a direct duty to [the] plaintiff which results in emotional injury to the plaintiff." *See Stephens v. Shuttle Associates, L.L.C.,* 547 F.Supp.2d 269, 275 (S.D.N.Y.2008). In order to recover under the bystander theory, a plaintiff must prove that she witnessed "the death or serious bodily injury of a member of her immediate family" (*id.*), which clearly is not applicable in this case. Consequently, Mrs Chen's only chance for recovery here would be under the direct duty theory, wherein "a plaintiff suffers an emotional injury from defendant's breach of a duty which unreasonably endangered [the plaintiff's] own physical safety." *Id.,* at 275–276. Nonetheless, "[t]he duty in such cases must be specific to the plaintiff and not some amorphous, free-floating duty to society." *Id.*

\*7 In the case at bar, Mrs. Chen alleges that she suffered an emotional injury from the defendant police officers' threat to her physical safety and subsequent injury to her person. Defendants argue that Mrs. Chen has failed to prove that the defendant police officers breached a duty owed to her. Mrs. Chen has failed to address this issue in her response to the motion for summary judgment. She has not offered any facts establishing a prima facie case of NIED, *i.e.,* she has provided no evidence of a breach of duty owed to her by the defendant police officers. *See eg., Lee v. McCue,* 410 F.Supp.2d 221, 227 (S.D.N.Y.2006).

Accordingly, the court finds that Mrs. Chen has alleged no facts that would allow her to maintain a separate claim for NIED. Therefore, summary judgment is granted on the NIED claim, which is dismissed for failure to allege facts sufficient to

state a cause of action.

### E. Qualified Immunity

"[G]overnment officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). The seminal law on this issue is *Pearson v. Callahan,* ---- U.S. ---- , ---- S.Ct. ---- , ----L.Ed.2d ---- , 2009 WL 128768 (U.S.2009). *Pearson* is a decision handed down by the Supreme Court on January 21, 2009, which effectively overruled *Saucier v. Katz,* 533 U.S. 194, 200, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001). Since 2001, courts have relied on *Saucier* to set forth the procedure that a court must follow in determining if a defendant is immune from suit pursuant to the doctrine of qualified immunity. *Saucier* stood for the premise that "[f]irst, a court must decide whether the facts that a plaintiff has alleged (see Fed. Rules Civ. Proc. 12(b)(6), (c)) or shown (see Rules 50, 56) make out a violation of a constitutional right. Second, if the plaintiff has satisfied this first step, the court must decide whether the right at issue was 'clearly established' at the time of defendant's alleged misconduct. Qualified immunity is applicable unless the official's conduct violated a clearly established constitutional right." *Pearson,* ---- U.S. ---- at ----, 129 S.Ct. 808, 172 L.Ed.2d 565 at ----, 2009 WL 128768 at *6. In reconsidering *Saucier,* the *Pearson* Court found that while the *Saucier* protocol is often beneficial, it is no longer considered mandatory in all cases. In explaining its decision, the Court wrote that "[i]t is often difficult to decide whether a right is clearly established without deciding precisely what the constitutional right happens to be ... [T]he rigid *Saucier* procedure ... sometimes results in a substantial expenditure of scarce judicial resources on difficult questions that have no effect on the outcome of the case." *Id.* at * 10. In effect, *Pearson* gives courts additional discretion in deciding the issue of qualified immunity without a lengthy analysis of whether there was in fact a constitutional violation. In other words, a court may exercise discretion in deciding which of the two prongs of the qualified immunity inquiry to address first.

*\*8* *Saucier* still stands for the premise that "[q]ualified immunity operates to protect officers from the sometimes hazy border between excessive and acceptable force. Because police officers are often forced to make split-second judgments-in circumstances that are tense, uncertain, and rapidly evolving-about the amount of force that is necessary in a particular situation, the reasonableness of an officer's belief as to the appropriate level of force should be judged from that of an on-scene perspective." *Saucier,* 533 U.S. at 205.

As stated *supra,* "[a] court must consider whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation ... Not every push or shove, even if it may later seems unnecessary in the peace of a judge's chambers, violates the Forth Amendment." *Graham v. Connor,* 490 U.S. at 396–97 (internal quotations omitted). However, where "the record plainly reveals the existence of genuine issues of material fact relating to the qualified immunity defense," summary judgment cannot be granted. *Jones v. Parmley,* 465 F.3d 46, 63 (2d Cir.2006). *See also* *Simpkin v. City of Troy,* 224 A.D.2d 897, 638 N.Y.S.2d 231, 232 (N.Y.App.Div.1996) ("Clearly, without a factual resolution of the sharply conflicting versions of these events, it is not possible to determine whether defendants are qualifiedly immune").

In the instant case, the court must determine at the outset if Officers Reilly, Burns, and Kliest are entitled to a qualified immunity defense. After a careful review of the documents submitted by the parties, the court finds that Officer Kleist did nothing more than escort Dr. Chen to the airport police station, and no evidence has been proffered to indicate that Officer Kleist used force of any kind against Mrs. Chen, nor does Mrs. Chen specifically relate any wrongdoing by Officer Kleist in either her complaint or her deposition testimony. Accordingly, Officer Kleist will be dismissed from this action.

The question remains whether it was objectively reasonable for the remaining police officer defendants to believe that

their actions did not violate the law. The parties offer dramatically different versions of the airport incident, resulting in a substantial issue of material fact. Construing the facts of the case favorably toward the non-moving party, as it must do, the court must base its decision on Mrs. Chen's assertion that she was arrested for merely engaging in a dispute with a ticket agent at the airport, and was subsequently dragged, handcuffed and crying, to the airport police station. It is obvious that the parties have offered sharply conflicting versions of the events, and without a factual resolution of these differing accounts, the court cannot determine as a matter of law that the officers' actions were objectively reasonable or if officers of reasonable competence could disagree on the legality of the defendants' actions, given the discrete facts of this case. Consequently, Officers Burns and Kleist are not entitled to immunity from suit pursuant to the privileges accorded under the doctrine of qualified immunity.

### F. Vicarious Liability of the City of Syracuse

*9 In *Fera v. City of Albany,* 568 F.Supp.2d 248, 261–62 (N.D.N.Y.), this court recently held that "[u]nder New York law, municipalities may be vicariously liable for negligent acts and intentional torts of police officers." *Id.,* citing *Schuster v. City of New York,* 5 N.Y.2d 75, 81–82, 180 N.Y.S.2d 265, 154 N.E.2d 534 (1958); *Weeks v. City of New York,* 181 Misc.2d 39, 693 N.Y.S.2d 797, 801 (1999) (holding that 'where, as here, the dangerous condition does not exist before police intervention, but is then created by the negligent acts of police officers .... rather than applying principles of governmental immunity to shield the City from liability, principles of general tort liability should prevail.'); *Savarese v. City of New York Housing Authority,* 172 A.D.2d 506, 567 N.Y.S.2d 855 (2d Dep.1991) (holding that municipalities may be vicariously liable for intentional torts committed by employees); *Wu v. City of New York,* 934 F.Supp. 581, 592 (S.D.N.Y.1996) (holding that "an intentional infliction of emotional distress claim is viable against the City under a theory of respondeat superior liability.") *Fera,* 568 F.Supp.2d at 261–62. Following the reasoning in *Fera,* the City of Syracuse is denied immunity on the surviving tort claims.

### III. Conclusion

For the reasons set forth above, the court hereby:

(1) GRANTS defendants' motion for summary judgment as against Officer Mark Kleist, who is entitled to qualified immunity and is hereby DISMISSED from this action;

(2) Summary judgment is GRANTED on the claim against the City for negligent supervision and retention. Accordingly, all *Monell* claims against the City are DISMISSED;

(3) Summary judgment is GRANTED on the claim for NIED as against all parties;

(4) Summary judgment is granted on the claim of IIED against the City only; and

(5) Summary judgment on all remaining claims is DENIED.

**SO ORDERED.**

N.D.N.Y.,2009.
Chen v. City of Syracuse

Not Reported in F.Supp.2d, 2009 WL 529553 (N.D.N.Y.)

END OF DOCUMENT

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Westlaw Delivery Summary Report for HARRIST,ERIN B

| | |
|---|---|
| Date/Time of Request: | Friday, July 26, 2013 15:45 Central |
| Client Identifier: | EPPS |
| Database: | DCT |
| Citation Text: | Not Reported in F.Supp.2d |
| Lines: | 417 |
| Documents: | 1 |
| Images: | 0 |

The material accompanying this summary is subject to copyright. Usage is governed by contract with Thomson Reuters, West and their affiliates.

Westlaw.

Not Reported in F.Supp.2d, 2011 WL 1118608 (W.D.N.Y.)
**(Cite as: 2011 WL 1118608 (W.D.N.Y.))**

**H**
Only the Westlaw citation is currently available.

United States District Court,
W.D. New York.
Charles WATSON, Plaintiff,
v.
M.D. Lester N. WRIGHT, et al., Defendants.

No. 08–CV–00960(A)(M).
Jan. 11, 2011.

Charles Watson, Dannemora, NY, pro se.

George Michael Zimmermann, Office of the New York State Attorney General, Jane B. Wolfe, U.S. Attorney's Office, Buffalo, NY, for Defendants.

### REPORT, RECOMMENDATION AND ORDER

JEREMIAH J. McCARTHY, United States Magistrate Judge.

   **\*1** This case was referred to me by Hon. Richard J. Arcara for supervision of pretrial proceedings, including preparation of a report and recommendation on dispositive motions [36].[FN1] Before me are defendant Kathleen Sebelius' motion to dismiss the Third Amended Complaint [137] and plaintiff's motions for leave to file a Fourth Amended Complaint [153] and to transfer venue [109]. Oral argument as held on January 10, 2011[176].

FN1. Bracketed references are to the CM/ECF docket entries.

For the following reasons, I recommend that defendant Sebelius' motion to dismiss be granted and that plaintiff's motion for leave to amend be denied to the extent it seeks to assert an amended claim against defendant Sebelius, and I order that plaintiff's motion to amend be granted to the extent it seeks to add supplemental claims and that plaintiff's motion to transfer venue be granted in part and denied in part.

## BACKGROUND

Plaintiff, an inmate, commenced this action *pro se* pursuant to 42 U.S.C. § 1983, alleging that defendants have been deliberately indifferent to his medical needs while he has been incarcerated by the New York State Department of Correctional Services ("DOCS"), that they prohibited him from participating in a clinical drug trial in violation of due process, and that they have retaliated against him. Third Amended Complaint [96]. Other than defendant Sebelius, the remaining defendants are all employed by DOCS ("State defendants").

Defendant Sebelius moves to dismiss the Third Amended Complaint as against her [137]. In response to that motion, plaintiff moves for leave to file a Fourth Amended Complaint [153]. Plaintiff also moves to transfer venue of certain claims alleged in the Third Amended Complaint [109].[FN2]

FN2. I deferred setting a briefing schedule on plaintiff's motion for a protective order [113] pending resolution of these motions. October 4, 2010 Text Order [150].

## ANALYSIS

### A. Defendant Sebelius' Motion to Dismiss/Plaintiff's Motion for Leave to Amend

In response to defendant Sebelius' motion to dismiss, plaintiff moves for leave to file a Fourth Amended Complaint. This motion is opposed by all defendants.

Leave to amend "should not be denied unless there is evidence of undue delay, bad faith, undue prejudice to the non-movant, or futility." *Milanese v. Rust–Oleum Corp.,* 244 F.3d 104, 110 (2d Cir.2001). "An amendment will be deemed futile, and the motion to amend denied, where the amendment would be subject to dismissal [under Fed.R.Civ.P. ("Rule") 12(b)(6) ] for failure to state a claim upon which relief may be granted." *Christian v. Town of Riga,* 649 F.Supp.2d 84, 101 (W.D.N.Y.2009) (Telesca, J.), *reconsideration denied,* 2010 WL 4116785.

### 1. Defendant Sebelius' Opposition to Plaintiff's Motion for Leave to Amend

The proposed Fourth Amended Complaint alleges that plaintiff suffers from Hepatitis C and that he suffers from liver disease as a result of this condition. Proposed Fourth Amended Complaint [153–1], ¶¶ 38–39. Plaintiff alleges that in October 2008 he became aware of a Hepatitis C clinical drug trial, but was advised by DOCS that inmates were not allowed to participate in such trials pursuant to DOCS Directive 403 and 45 CFR, part 46, subpart C. *Id.,* ¶¶ 46–47.

**\*2** Plaintiff alleges that defendant Sebelius in her capacity as the Secretary of the United States Department of Health and Human Services ("HHS") is statutorily empowered to:

1) regulate clinical drug trials conducted by entities not funded or supported by HHS pursuant to 21 U.S.C. § 393(d) (2)(C), but has never enacted rules "effectively banning the use of prisoners in clinical drug trials by private entities" *id.,* ¶ 48; and

2) "encourage and fund research ... studies in the health sciences related to the ... prevention of humans diseases and disorders" pursuant to 42 U.S.C. § 241(a) and 284(b)(1)(A)(ii), and has instituted rules (45 CFR part 46, subpart C) "concerning the participation of prisoners in clinical trials supported by HHS". *Id.,* ¶¶ 49–50.

According to plaintiff, "[t]he failure of defendant Sebelius to encourage, fund and support the participation of prisoners in clinical drug trials of Hepatitis C treatment and the propagation of regulation which effectively bans the participation of prisoners in non-HHS funded clinical trials constitutes a violation of federal statute and of the Equal protection and Substantive Due Process components of the Fifth Amendment". *Id.,* ¶ 67, Sixth Cause of Action. Plaintiff seeks an injunction requiring defendant Sebelius "to follow [her] statutory dictates and facilitate the opportunity for prisoners to apply to participate in therapeutic clinical drug trials for the treatment of Hepatitis C", and a declaratory judgment against defendant Sebelius "affirming the Plaintiff's right, even as a prisoner, to participate in a clinical drug trial for therapeutic treatment of his ailment". *Id.,* Wherefore Clause, ¶¶ A(5) and B. Plaintiff's claims for injunctive and declaratory relief are brought pursuant to 28 U.S.C. § 1361(Mandamus Act) and § 2201 (Declaratory Judgment Act). Proposed Fourth Amended Complaint [153–1], p. 2 and ¶ 1.

**a. Plaintiff's Standing**

Defendant Sebelius argues that "[p]laintiff has not asserted an immediate or real threat of future harm; therefore, plaintiff does not have standing to seek this broad injunctive relief as the court can only impose remedies that benefit the parties before the court". Defendant Sebelius' Memorandum of Law [164], p. 11.

To establish standing "a plaintiff must demonstrate that (1) he or she has suffered an injury; (2) the injury is traceable to the defendants' conduct; and (3) a federal court decision is likely to redress the injury." *Deshawn E. by Charlotte E. v. Safir,* 156 F.3d 340, 344 (2d Cir.1998). "A plaintiff seeking injunctive or declaratory relief cannot rely on *past* injury to satisfy the injury requirement but must show a likelihood that he or she will be injured in the future." *Id.* (emphasis added)

Without identifying any current Hepatitis C clinical drug trials he would qualify for, plaintiff's proposed Fourth Amended Complaint seeks prospective relief to facilitate prisoner participation in clinical drug trials for the treatment of Hepatitis C. Plaintiff having failed to identify any current or future Hepatitis C clinical drug trial for which he would qualify, I find that plaintiff has not sufficiently alleged the likelihood of future harm. In fact, plaintiff's Third Amended Complaint concedes that "there are no trials planned with participation of prisoners". Third Amended Complaint [96], ¶ 46. I also find that plaintiff has not established standing to seek relief on behalf of other prisoners as alleged in his proposed Fourth Amended Complaint.

**b. Futility of the Proposed Amendment**

**\*3** Even assuming that plaintiff had established standing to assert his claims against defendant Sebelius, I conclude that it would be futile to permit the amendment. Defendant Sebelius argues that: 1) plaintiff's claims are barred by sovereign immunity (defendant Sebelius' Memorandum of Law [138], pp. 9–12); 2) even if the clinical drug trials referenced by plaintiff were funded or conducted by HHS, defendant Sebelius does not have the authority to provide the relief plaintiff requests (*id.,* pp. 7–12); 3) the absence of regulations do not deny prisoners the opportunity to participate in privately sponsored FDA clinical drug trials (*id.,* pp. 12–13); and 4) plaintiff cannot meet his burden of establishing his entitlement to

mandamus relief. *Id.,* pp. 13–14. I will address these arguments individually.

Defendant Sebelius argues that plaintiff's motion should be denied "because the federal defendant has not waived sovereign immunity with respect to plaintiff's equal protection and substantive due process claims". Defendant Sebelius' Memorandum of Law [164], p. 6.[FN3] I disagree.

> FN3. In opposition to plaintiff's Third Amended Complaint defendant Sebelius similarly argues that plaintiff's 42 U.S.C. § 1983 claims for monetary relief must be dismissed on the grounds of sovereign immunity. Defendant Sebelius' Memorandum of Law [138], pp. 9–12.

"Sovereign immunity is a jurisdictional bar ... which, absent a waiver, shields the federal government, its agencies and its officers acting in their official capacity from suits *seeking monetary damages." Rosales v. United States Postal Service,* 2010 WL 2653381, *2 (E.D.N.Y.2010) (emphasis added). [FN4] Unlike the Third Amended Complaint ( [96], p. 2), the proposed Fourth Amended Complaint ( [153], p. 2) seeks *no* monetary damages against defendant Sebelius, and does not seek relief against her under 42 U.S.C. § 1983 or *Bivens v. Six Unknown Agents,* 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971). Therefore, I find that plaintiff's claims in the proposed Fourth Amended Complaint are not barred by sovereign immunity. Nevertheless, I find that the proposed Fourth Amended Complaint fails, as a matter of law, to state a claim against defendant Sebelius.

> FN4. The Administrative Procedure Act ("APA") provides that "[a]n action in a court of the United States seeking relief *other than money damages* and stating a claim that an agency or an officer or employee thereof acted or failed to act in an official capacity or under color of legal authority shall not be dismissed nor relief therein be denied on the ground that it is against the United States or that the United States is an indispensable party." 5 U.S.C. § 702 (emphasis added). Although the APA is not cited in plaintiff's proposed Fourth Amended Complaint, the APA "does not provide an independent basis of jurisdiction to review agency actions." *Assiniboine and Sioux Tribes of Fort Peck Indian Reservation v. Board of Oil and Gas Conservation of State of Montana,* 792 F.2d 782, 793 (9th Cir.1986).

Petitioner relies on 42 U.S.C. §§ 241(a) and 284(b) in support of his claim against defendant Sebelius. However, neither statute grants plaintiff the right to participate in a clinical drug trial. According to 42 U.S.C. § 241(a), defendant Sebelius, as Secretary of HHS, is required to "conduct, ... encourage, cooperate with, and render assistance to other appropriate public authorities, scientific institutions, and scientists in the conduct of, and promote the coordination of, research, investigations, experiments, demonstrations, and studies relating to the causes, diagnosis, treatment, control, and prevention of physical and mental diseases and impairments of man". 42 U.S.C. § 284(b)(1)(A)(ii) similarly provides that "[i]n carrying out the purposes of section 241 ... the Secretary, acting through the Director of each national research institute ... shall encourage and support research, investigations, experiments, demonstrations, and studies in the health sciences related to ... the detection, diagnosis, treatment, and prevention of human diseases and disorders".

*4 Moreover, the regulations governing research conducted or supported by HHS involving prisoners as subjects (45 C.F.R. §§ 301–306) expressly recognize that HHS' authority to authorize research involving prisoners as subjects does not preempt state and local laws barring such activity. 45 C.F.R. § 46.301(b). Thus, it is apparent that the statutory and regulatory authority upon which plaintiff relies does not grant plaintiff the legal right to participate in a clinical trial, and does not afford the Secretary the power to facilitate or encourage the participation of plaintiff in a clinical drug trial. Defendant Sebelius'

Memorandum of Law [164], p. 9. Because "a claim for injunctive relief can stand only against someone who has the authority to grant it", *Williams v. Doyle,* 494 F.Supp.2d 1019, 1024 (W.D.Wis.2007), I find that the proposed amendment would be futile.

To the extent plaintiff is basing his claim on the alleged failure of defendant Sebelius to enact regulations governing prisoner participation in privately sponsored clinical drug trials, such claim is likewise futile. As defendant Sebelius argues, the lack of regulation with respect to prisoner participation in privately sponsored clinical drug trials "arguably would make it more administratively simple to enroll a prisoner in a privately sponsored clinical drug trial, as no additional constraints on ethical review and approval of the clinical trial—such as those imposed by Subpart C—would apply". Defendant Sebelius' Memorandum of Law [164], pp. 12–13.

Even assuming that plaintiff could establish that defendant Sebelius had authority to permit him to participate in a clinical drug trial (whether HHS or privately sponsored), he has not established his entitlement to mandamus relief. A writ of mandamus may issue only when there is: "(1) a clear right in the plaintiff to the relief sought; (2) a plainly defined and peremptory duty on the defendant's part to do the act in question; and (3) lack of another available, adequate remedy." *Billiteri v. United States Board of Parole,* 541 F.2d 938, 946 (2d Cir.1976). "[J]urisdiction under the mandamus statute is limited to actions seeking to compel the performance of a nondiscretionary duty." *Duamutef v. Immigration and Naturalization Service,* 386 F.3d 172, 180 (2d Cir.2004). Having failed to establish neither a clear entitlement to participation in a clinical drug trial nor a non-discretionary duty on the part of defendant Sebelius to facilitate his participation, plaintiff has not established his entitlement to mandamus relief.

**2. State Defendants' Opposition to Plaintiff's Motion for Leave to Amend**

Although plaintiff sought leave to file the proposed Fourth Amended Complaint in an attempt to correct the deficiencies raised by defendant Sebelius' motion to dismiss, the proposed Fourth Amended Complaint also adds allegations against the State defendants. The State defendants oppose plaintiff's motion for leave to amend, arguing that this amendment is barred by the Case Management Order deadline for amending pleadings [FN5] and that the amendments are otherwise futile. State Defendants' Memorandum of Law [163], Points I and II. I disagree.

   FN5. Defendant Sebelius did not raise this argument.

*5 The initial Case Management Order, which was issued when plaintiff's Second Amended Complaint [45] was the operative pleading, required all motions to amend to be filed by July 24, 2009.[72], ¶ 2. This deadline was not extended in the Amended Case Management Order [93].[FN6]

      FN6. Although plaintiff was granted leave to file a Third Amended Complaint [96], this was based upon the lack of opposition by defendants. February 23, 2010 Text Order [95].

Ordinarily, "[a] party seeking to amend a pleading after the date specified in a scheduling order must first show 'good cause' for the amendment under Rule 16(b); then, if good cause can be shown, the party must demonstrate that the amendment is proper under Rule 15(a)." *Carnrite v. Granada Hospital Group, Inc.,* 175 F.R.D. 439, 446 (W.D.N.Y.1997) (Arcara, J.); *Parker v. Columbia Pictures Industries,* 204 F.3d 326, 340 (2d Cir.2000) ("despite the lenient standard of Rule 15(a), a district court does not abuse its discretion in denying leave to amend the pleadings after the deadlines set in the scheduling order where the moving party has failed to establish good cause"). While plaintiff's motion is characterized as a motion to

http://web2.westlaw.com/print/printstream.aspx?prft=HTML&vr=2....

amend, what plaintiff actually seeks is to *supplement* his Third Amended Complaint with the alleged acts of deliberate indifference occurring *since* the filing of that pleading pursuant to Rule 15(d). Plaintiff's Reply [170], p. 1 ("The amended complaint was also submitted pursuant to [Rule] 15(d) to bring events to the Court's attention since the filing of the Third Amended Complaint").

Under these circumstances, Rule 16(b)'s good cause standard is not applicable. *See Ohio Valley Environmental Coalition v. United States Army Corps of Engineers,* 243 F.R.D. 253, 256 (S.D.W.Va.2007).[FN7] The Case Management Order set a deadline for "amending" pleadings, but not for supplementation. [72], ¶ 2. "Unlike motions to amend ... Rule 16's plain language does not require courts to set a deadline for filing a motion to supplement and the parties in this case did not set such a deadline in their Scheduling Order." *Fremont Investment & Loan v. Beckley Singleton, Chtd.,* 2007 WL 1213677, *7 (D.Nev.2007).

> FN7. *Compare with McGrotha v. Fed Ex Ground Package System, Inc.,* 2007 WL 640457, *2 (M.D.Ga.2007) ("When a motion to supplement is filed after the scheduling order's deadline, however, a party must first demonstrate good cause under Rule 16(b) before a court can consider whether supplementation is proper under Rule 15(d)").

The Fourth Amended Complaint adds allegations that plaintiff has not been referred to a dermatologist for his pruritus and that he requires additional showers and lotion for this condition. Proposed Fourth Amended Complaint [153–1], ¶ 43. It also adds allegations that plaintiff's prescription for Ensure was discontinued, and requests a change of his primary care provider. *Id.,* ¶¶ 44–45.

My previous decisions on plaintiff's motions for preliminary injunctions concluded that plaintiff had not established the likelihood of success on the merits of his deliberate indifference claims alleged in his earlier complaints. *See, e.g.,* June 8, 2009 Report, Recommendation and Order [70]; March 10, 2010 Report and Recommendation [98]. However, the issue of futility under the Rule 12 standard is distinct from the likelihood of success standard applied in the preliminary injunction context.

"[I]t must be remembered that the question on a 12(b)(6) motion 'is not whether a plaintiff is likely to prevail ultimately, but whether the claimant is entitled to offer evidence to support the claims ... [even where] recovery is very remote and unlikely' ". *Cole v. Artuz,* 2000 WL 760749, *5 (S.D.N.Y.2000) (quoting *Chance v. Armstrong,* 143 F.3d 698, 701 (2d Cir.1998)). Applying this standard, I do not find that the supplemental allegations of deliberate indifference in the proposed Fourth Amended Complaint fail, as a matter of law, to state a claim. Although defendants challenge each supplemental act of deliberate indifference asserted in the proposed Fourth Amended Complaint individually, "[t]he *totality* of an inmate's medical care must be considered in order to determine whether a prison official has acted with deliberate indifference to serious medical needs." *Wandell v. Koenigsmann,* 2000 WL 1036030, *3 (S.D.N.Y.2000) (emphasis added). Thus, while each supplemental act standing alone may not demonstrate deliberate indifference, when analyzed collectively and in conjunction with the totality of plaintiff's medical care, the proposed Fourth Amended Complaint may adequately state a deliberate indifference claim sufficient to survive dismissal.

*6 Therefore, I order that plaintiff's motion for leave to amend be granted to the extent it seeks to add supplemental claims against the State defendants, but otherwise recommend that it be denied.[FN8] Since plaintiff has failed to offer any opposition to defendant Sebelius' motion to dismiss, other than seeking to amend, I recommend that defendant Sebelius'

motion to dismiss be granted. *See Bankruptcy Trust of Gerard Sillam v. Refco Group, LLC,* 2006 WL 2129786,* 4 (S.D.N.Y.2006) ("Essentially, plaintiffs consent to the dismissal of the present complaint, but seek leave to amend the complaint under Fed.R.Civ.P. 15(a)").

> FN8. "Although the Court of Appeals for the Second Circuit has not ruled on whether a motion to amend a pleading is properly classified as dispositive or nondispositive, the weight of authority within this Circuit classifies a motion to amend a pleading as a non-dispositive pre-trial motion." *Smith v. Goord,* 2007 WL 496371, *2 (W.D.N.Y.2007) (Siragusa, J.). *See Fielding v. Tollaksen,* 510 F.3d 175, 178 (2d Cir.2007) "On the other hand, some district courts in this circuit have held that a denial of a motion to amend is dispositive in situations where the denial is based on futility, because such a motion is analyzed under the same standard as a motion to dismiss for failure to state a claim or a motion for summary judgment, both of which are dispositive motions." *Children First Foundation, Inc. v. Martinez,* 2007 WL 4618524, *4 (N.D.N.Y.2007). Therefore, erring on the side of caution, I will treat the motion to amend as dispositive to the extent that I am denying it on futility grounds. However, to the extent the motion seeks to supplement the claims against the State defendants, it is non-dispositive. *See Sidari v. Orleans County,* 169 F.Supp.2d 158, 163 (W.D.N.Y.2000) (Siragusa, J./Scott, M.J.).

## B. Plaintiff's Motion to Transfer Venue[FN9]

> FN9. Motions to transfer venue are non-dispositive. *See Anscombe Broadcasting Group, Ltd. v. RJM Communications, Inc.,* 2004 WL 2491641, *1 n. 1 (W.D.N.Y.2004) (Foschio.M.J.); *O'Brien v. Gold Star Technologies, Inc.,* 812 F.Supp. 383 (W.D.N.Y.1993) (Heckman, M.J.).

Plaintiff moves to transfer the Sixth Cause of Action alleging a retaliatory transfer by officials at DOCS' central office and Green Haven Correctional Facility to the Southern District of New York. Plaintiff's Motion to Transfer Venue [109], p. 2. Because the State defendants do not oppose this aspect of plaintiff's motion, *see* State Defendants' Memorandum of Law [155], p. 4, I order that it be granted.

Plaintiff also moves to transfer his Fifth Cause of Action against defendants Sebelius and Wright challenging the policy of prohibiting prisoners from participating in clinical drug trials to the District of Columbia. Plaintiff's Motion to Transfer Venue [109], p. 2. 28 U.S.C. § 1391(b) provides that venue is proper in "(1) a judicial district where any defendant resides, if all defendants reside in the same State, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (3) a judicial district in which any defendant may be found, if there is no district in which the action may otherwise be brought."

Since I am recommending that plaintiff's claims against defendant Sebelius—the only defendant with a connection to the District of Columbia—be dismissed, venue for the Fifth Cause of Action is not proper in the District of Columbia, because the operative facts against defendant Wright have no connection to that venue. Therefore, this aspect of plaintiff's motion to transfer venue is denied.

## CONCLUSION

For these reasons, I recommend that defendant Sebelius' motion to dismiss [137] be granted and that plaintiff's motion for leave to amend [153] be denied to the extent it seeks to assert an amended claim against defendant Sebelius, and I order that plaintiff's motion to amend [153] be granted to the extent it seeks to add supplemental claims against the State defendants

and that plaintiff's motion to transfer venue [109] be granted to the extent it seeks to transfer the Sixth Cause of Action of the Third Amended Complaint ( [96], ¶ 62) to the Southern District of New York, but otherwise is denied.

Unless otherwise ordered by Judge Arcara, any objections to this Report, Recommendation and Order must be filed with the clerk of this court by January 28, 2011 (applying the time frames set forth in Rules 6(a)(1)(C), 6(d), and 72(b)(2)). Any requests for extension of this deadline must be made to Judge Arcara. A party who "fails to object timely ... waives any right to further judicial review of [this] decision". *Wesolek v. Canadair Ltd.,* 838 F.2d 55, 58 (2d Cir.1988); *Thomas v. Arn,* 474 U.S. 140, 155, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985).

**\*7** Moreover, the district judge will ordinarily refuse to consider *de novo* arguments, case law and/or evidentiary material which could have been, but were not, presented to the magistrate judge in the first instance. *Patterson–Leitch Co. v. Massachusetts Municipal Wholesale Electric Co.,* 840 F.2d 985, 990–91 (1st Cir.1988).

The parties are reminded that, pursuant to Rule 72(b) of the Local Rules of Civil Procedure for the Western District of New York, written objections "shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for each objection, and shall be supported by legal authority." Failure to comply with the provisions of Local Rule 72(b), may result in the district judge's refusal to consider the objection.

**SO ORDERED.**

W.D.N.Y.,2011.
Watson v. Wright
Not Reported in F.Supp.2d, 2011 WL 1118608 (W.D.N.Y.)

END OF DOCUMENT

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.